UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADA DONOFRIO,

      Plaintiff,

– *against* –

ANDREW SAUL, *Commissioner of Social Security*,

      Defendant.

**OPINION & ORDER**

18 Civ. 9968 (ER)

RAMOS, D.J.:

  Ada Donofrio brings this action pursuant to 42 U.S.C. § 405(g), challenging the decision of the Acting Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB"). Doc. 1. Pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Docs. 9, 11. For the reasons stated below, Donofrio's motion is GRANTED, and the Commissioner's motion is DENIED.

## I. BACKGROUND

### A. Statutory Scheme

  An individual is considered "disabled" under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Additionally, a claimant seeking DIB must demonstrate that she became disabled before the date on which she was last insured. *Id.* §§ 416(i), 423(a) & (c)(1). In making a disability determination, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant . . . ; and (4) the claimant's educational background, age, and work

experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citations omitted).

In order to determine whether an individual is disabled, the Commissioner follows the five-step sequential evaluation process set out in 20 C.F.R. § 404.1520. At step one, the Commissioner determines whether the individual is engaged in any "substantial gainful activity"; if she is, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i), (b). At step two, the Commissioner determines whether the individual has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities"; if she does not have such an impairment, she is not disabled. *Id.* § 404.1520(c), (a)(4)(ii). At step three, the Commissioner determines whether the individual has an impairment that meets or equals one of those listed in Appendix 1; if she does, she is disabled. *Id.* § 404.1520(a)(4)(iii), (d). If she does not, the Commissioner will assess and make a finding about the individual's residual functional capacity ("RFC")—or "the most [she] can still do despite [her] limitations"—based on all the relevant evidence in her case record. *Id.* §§ 404.1545(a)(1), 404.1520(e). At step four, the Commissioner determines whether, considering her RFC, the individual can still do her past relevant work; if she can, she is not disabled. *Id.* § 404.1520(a)(4)(iv), (f). Finally, at step five, the Commissioner determines whether, considering her RFC, age, education, and work experience, the individual can make the adjustment to other work; if she cannot make the adjustment to other work, she is disabled, and if she can, she is not. *Id.* § 404.1520(a)(4)(v), (g). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### B. Procedural History

Donofrio claims an onset of disability of December 17, 2006. Doc. 8 at 119–125. The parties do not dispute that Donofrio met the insured status requirements of the Social

Security Act through December 31, 2012 (the "date last insured"). Accordingly, the relevant period is from December 17, 2006 through December 31, 2012.

Donofrio filed an application for Social Security Disability benefits ("SSD") on September 20, 2013. Doc. 8 at 119–125. Donofrio's claim was denied on November 21, 2013, and Donofrio requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 58–65. Donofrio appeared before an ALJ on October 15, 2015. *Id.* at 33–50. In a written decision dated November 17, 2015, the ALJ found that Donofrio was not disabled. *Id.* at 8–21. The Appeals Council denied Donofrio's request for review. *Id.* at 1–7. Donofrio then filed a civil action in the United States District Court for the Southern District of New York, where the parties subsequently stipulated to remand the case for a new hearing and decision. *Id.* at 767–77. The Appeals Council then entered an order remanding the case to an ALJ for a new hearing and decision. *Id.* at 779–84. Donofrio appeared before an ALJ again on November 6, 2017. *Id.* at 712–41. In a written decision dated February 27, 2018, the ALJ again found that Donofrio was not disabled. *Id.* at 689–711. The Appeals Council denied review on August 29, 2018, making the ALJ's decision the final decision of the Commissioner. *Id.* at 676–83. It is this decision that is on appeal.

Donofrio filed this action on October 29, 2018. Doc. 1. On May 10, 2019, Donofrio moved for judgment on the pleadings. Doc. 9. The Commissioner filed a cross-motion for judgment on the pleadings on July 9, 2019. Doc. 11.

### C. November 2017 Hearing Before the ALJ

Donofrio's second hearing before the ALJ occurred on November 6, 2017 in White Plains, New York. Doc. 8 at 712. At the hearing, Donofrio gave testimony and was represented by her attorney, Gary Pernice. *Id.* Also present and testifying was Esperanza Di Stefano, a vocational expert. *Id.*

Donofrio testified that she was fifty-eight years old, had been married for twenty years, and had attended one year of college. *Id.* at 717. The last time she worked was as

3

a legal secretary in 2006. *Id.* at 717–18. She had been a legal secretary for six years, and, before that, had been an office assistant from 1992 to 1998. *Id.* at 718. She stopped working in 2006 because "[her] office downsized." *Id.* At the time she stopped working, she was in physical therapy for issues related to carpal tunnel, her arm, her neck, and her lumbar. *Id.* at 719.

She testified that during the relevant period, between 2006 and 2012, her neck and lumbar caused her the most pain. *Id.* Her neck pain made it very difficult for her to sit straight, to look at the computer for long periods of time, to sit or stand for long periods of time, and to sleep. *Id.* She would occasionally watch television or use the laptop, but had to put the laptop down frequently, as looking at it caused her pain. *Id.* at 727–28. She testified that she was taking pain medication at the time but could not remember which one. *Id.* at 719–20. On October 14, 2013, Donofrio was in a car accident, which exacerbated her neck pain. *Id.* at 720. She had neck surgery in June 2016. *Id.* at 723.

Her back pain during this period made it difficult for her to sit or stand for long periods of time. *Id.* at 720. She would only take quick showers or have a seat in the shower. *Id.* at 725. Getting dressed was difficult because she could not bend (*e.g.*, to put on socks). *Id.* at 725. It also made it difficult for her to do household chores, like groceries. *Id.* at 720. During this time, her husband would help her with chores when she could not do them. *Id.* at 724. For example, her husband would do the laundry if she could not do it, and they had their groceries delivered. *Id.* at 726. Pain in her neck and back also made it difficult for her to drive, though she would occasionally drive short distances. *Id.* at 725, 730.

She also testified that between 2006 and 2012 she experienced difficulties due to carpal tunnel syndrome, which caused her weakness in her dominant arm (her left arm). *Id.* at 721. Because of this weakness, she was unable to do things like fasten her bra, open a jar, or reach for a box of tissues. *Id.* at 721, 724. Her carpal tunnel made it painful to hold a bottle of soda or to pick up files. *Id.* at 728. She testified that "[i]f I

could pick up five pounds that's a lot." *Id.* at 723. She could not recall if anyone had offered her the option of carpal tunnel surgery. *Id.* at 721.

She also testified that she had started having knee pain during that time period and was currently scheduled for knee surgery. *Id.* at 721–22. She had problems walking between 2006 and 2012 and could not walk for more than twenty to thirty minutes without stopping, though she did not need a cane. *Id.* at 722.

She described her typical day as getting up early because she could not sleep, trying to stretch or ease the pain, and trying to go back to sleep. *Id.* at 729. She would eventually try to do housework, but her husband would take over whatever she could not do. *Id.* In general, Donofrio testified that the pain made it difficult for her to sleep and to concentrate. *Id.* at 723–24. She could only sit for, at most, twenty minutes without getting up, nor could she stand for longer than twenty minutes without sitting down. *Id.* at 722–23. She had to keep her legs elevated to help with the pain. *Id.* at 731. During the relevant time period, she had gone on one long-distance trip, to visit her uncle in Puerto Rico for a week, but she stated that she was uncomfortable during the flight. *Id.* at 725–26. She occasionally attended religious services but had difficulty sitting throughout them. *Id.* at 730.

Di Stefano, the vocational expert, also testified. She stated that Donofrio's previous work was as a legal secretary, which is a sedentary, skilled position; and as a receptionist, which is a sedentary, semi-skilled position. *Id.* at 732–33. The ALJ then posed a number of hypotheticals to Di Stefano. First, the ALJ asked Di Stefano to:

> [A]ssum[e] an individual the same age, education, and past work experience as the Claimant is limited to a light exertional level. Can never climb ladders, ropes, or scaffolds. Occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. And I am going to add a sit/stand option after every hour having to sit down at the workstation—sit down for two to three minutes and stand back up. And . . . is limited frequently bilaterally to fine and gross hand manipulations. . . . And could such an individual perform any past work?

5

*Id.* at 733. Di Stefano opined that such an individual could perform the legal secretary and receptionist positions as performed in the national economy. *Id.* The ALJ next asked Di Stefano to assume the same hypothetical, except with "occasional use in fine hand, gross manipulations," in both hands. *Id.* at 734. Di Stefano opined that such an individual would not be able to perform past work as generally performed in the national economy. *Id.* The ALJ next asked whether "an individual of the same age, education, and past work experience [who] was limited to a sedentary exertional level," and had all the same limitations as in the first hypothetical, including the sit/stand option, would be able to perform past work. *Id.* Di Stefano opined that such an individual would be able to perform past work as generally performed in the national economy. *Id.* Finally, the ALJ asked Di Stefano to consider the same hypothetical, but "changed the use of defining gross hand manipulations to occasional." *Id.* De Stefano opined that such an individual could not perform any past work. *Id.*

Next, Pernice, Donofrio's counsel, asked Di Stefano a series of hypotheticals. First, he asked her to consider the same individual from the ALJ's hypothetical, but such that she needed to stand every ten to fifteen minutes and move around for fifteen to twenty minutes before returning to a seated position. *Id.* at 735. Di Stefano opined that such an individual could not perform Donofrio's past work. *Id.* at 737. Next, Pernice asked whether the need to keep her legs elevated throughout the day would affect such an individual's jobs as a legal secretary and receptionist. *Id.* Di Stefano opined that it would not. *Id.* Pernice then asked Di Stefano to consider the individual from the ALJ's hypothetical, but that for more than two-thirds of the day she would be "limited in her ability to grasp, turn, twist objects with her left dominant arm, would also be limited in her ability to use hands and fingers for fine manipulation on the left arm . . . and also, would be limited in her use for reaching including overhead with the left dominant arm." *Id.* at 737–38. Di Stefano opined that such an individual would not be able to do Donofrio's past work. *Id.* at 738. Finally, Pernice asked whether such an individual who

6

"would have difficulty looking down and looking up back and forth from a computer on a regular basis" for two-thirds of the day would be able to perform legal secretary-type work. *Id.* at 739–40. Di Stefano opined that such an individual would not be able to perform this work. *Id.* at 740.

### D. Relevant Medical Evidence

The parties have both provided summaries of the medical evidence in the record. *See* Doc. 10 at 2–12; Doc. 12 at 2–11. The summaries are substantially consistent with each other. Accordingly, the Court adopts both parties' summaries of the medical evidence as accurate and, when taken together, complete for purposes of the issues raised in this suit.

The ALJ focused on medical records and evaluations from Dr. John Olsewski, an orthopedic surgeon; Dr. Sireen Gopal, a specialist in physical medicine, rehabilitation, and pain management; Dr. Jerry Kaplan, a neurologist; and Dr. Paul Bisson, an internist; as well as on the medical opinion of Dr. David Shein, an orthopedic specialist. Drs. Olsewski, Gopal, Kaplan, and Bisson all saw Donofrio both before and during the relevant time period. Dr. Shein only began treating Donofrio after the relevant period. We discuss in more detail the medical evidence pertinent to the adjudication of this case in Part III, below.

### E. The ALJ's Decision

The ALJ denied Donofrio's DIB application on February 27, 2018. Doc. 8 at 689. First, the ALJ found that Donofrio's date last insured was December 31, 2012. *Id.* at 693. The ALJ then followed the five-step test set forth in the SSA regulations. At step one, the ALJ found that Donofrio had not engaged in "substantial gainful activity" during the relevant period. *Id.* at 695. At step two, the ALJ found that, through the date last insured, Donofrio suffered from the "severe impairments" of cervical radiculopathy, carpal tunnel syndrome, and osteoarthritis. *Id.* However, at step three, the ALJ found that none of

7

these impairments or combination of impairments met or medically equaled the severity of one of the impairments listed in Appendix 1. *Id.* at 696–97.

Before moving to step four, the ALJ addressed Donofrio's RFC. The ALJ found that Donofrio had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except that Donofrio could "occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs, and never climb ladders, ropes, or scaffolds." *Id.* at 697. The ALJ further noted that Donofrio "must have a sit/stand option every hour for two to three minutes," and could "do frequent fine and gross hand manipulations, bilaterally." *Id.* In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." as required by 20 C.F.R. § 404.1529 and SSR 16-3p. *Id.* The ALJ also considered opinion evidence, as required by 20 C.F.R. § 404.1527. *Id.*

In considering Donofrio's symptoms, the ALJ engaged in a two-step process. First, she determined whether there was "an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [Donofrio's] pain or other symptoms." *Id.* Second, the ALJ evaluated "the intensity, persistence, and limiting effects of [Donofrio's] symptoms to determine the extent to which they limit [her] functional limitations." *Id.* The ALJ ultimately concluded that Donofrio's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and that Donofrio's statements were "largely consistent with the medical evidence and other evidence in the record," but that they were "inconsistent with a claim that they are disabling." *Id.* at 700–701. Specifically, the ALJ found that Donofrio had testified that she stopped working due to downsizing, and that her description of the extent of her symptoms did "not correspond to the objective medical evidence." *Id.* at 701.

8

With respect to the opinion evidence, the ALJ gave no weight to the opinion of Donofrio's treating physician, Dr. Shein. *Id.* at 700. As per the ALJ, Dr. Shein, who began treating Donofrio on October 24, 2013, after the date last insured, provided three opinions regarding Donofrio's physical limitations. In the first, offered on July 20, 2015, Dr. Shein specified that the diagnosis and limitations were not expected to last at least twelve months. *Id.* In his second opinion, offered on October 14, 2015, Dr. Shein opined that Donofrio "could sit for one hour in an eight-hour day, and stand/walk for less than one hour in an eight-hour day." *Id.* He also opined that Donofrio "should avoid continuous sitting, elevate her legs while sitting every 30 minutes, and she could frequently lift/carry up to 20 pounds and occasional[ly] lift/carry over 50 pounds." *Id.* He also opined that she could never use her left arm for "fine and gross manipulations and reaching overhead"; her right arm could perform these activities frequently. *Id.* He related all of these symptoms and limitations back to January 1, 2006. In his final opinion, offered on November 1, 2017, Dr. Shein opined that Donofrio could "sit, stand, and walk for less than one hour in an eight-hour day, never lift/carry any amount of weight, never use eight [*sic*] upper extremity for reach overhead and fine and gross manipulation, and that she was unfit for work." *Id.* He related these symptoms and limitations back to December 17, 2006. *Id.*

The ALJ found that Dr. Shein had not explained how the symptoms and limitations related back to either the January 1 or December 17 date, when he did not begin treating the claimant until after the date last insured and when Donofrio had been involved in a car accident on October 14, 2013, also after the date last insured. *Id.* The ALJ found that Dr. Shein's own notes indicated that Donofrio's low back pain was a new condition resulting from the accident, as was his treatment of her spine. *Id.* According to Dr. Shein's notes, the accident changed Donofrio's "clinical picture completely." *Id.* The ALJ also found that Dr. Shein's opinion was inconsistent with examination findings. For example, Dr. Kaplan had found in 2010 that Donofrio had a "normal gait, no difficulty

9

with heel, toe, or tandem walking, and she supported her weight on either foot." *Id.* Similarly, Dr. Olsewski's examination was normal, except for range of motion of the cervical spine. *Id.* As for Dr. Shein's first opinion, the ALJ also disregarded it because it referred only to temporary limitations. *Id.* Upon full consideration of the record, the ALJ found that "[t]here is little evidence to support the extreme limitations prior to the date last insured." *Id.*

The ALJ similarly disregarded opinions issued after the date last insured that did not specify that they applied to the relevant period. *Id.*

Having determined Donofrio's RFC, the ALJ concluded at step four that, based on Di Stefano's testimony, Donofrio would be able to perform past relevant work (*e.g.* as a legal secretary or a receptionist). *Id.* at 701–702. As such, the ALJ found that Donofrio was not disabled.

## II. STANDARD OF REVIEW

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing a denial of disability benefits, however, the Court may not determine *de novo* whether an individual is disabled. Rather, the Court may only reverse the ALJ's determination if it is based upon legal error or is not supported by substantial evidence. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the ALJ's findings as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). If, on the other hand, the ALJ's determination is not supported by substantial evidence or contains legal error, the determination must be reversed or remanded. *Rosa*, 168 F.3d at 77.

**III. DISCUSSION**

Donofrio raises three arguments in support of her motion for judgment on the pleadings. First, she argues that the ALJ failed to properly evaluate her testimony. Second, she argues that the ALJ failed to properly weigh the medical opinion evidence of Dr. Shein, her treating physician at the time of the hearing. Finally, she argues that the ALJ failed to provide a detailed discussion of the evidence supporting the RFC. The Court considers each of these arguments in turn.

**A. Donofrio's Testimony**

Donofrio argues that the ALJ discredited her testimony without properly evaluating it. In her decision, the ALJ found that while Donofrio's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms [were] largely consistent with the medical evidence and other evidence in the record, they [were] inconsistent with a claim that they are disabling." Doc. 8 at 700–701. As evidence of this, the ALJ noted that Donofrio began treating her impairments while she was still working and that she stopped working, not because of her impairments, but because of downsizing. *Id.* at 701. The ALJ further noted that Dr. Kaplan's medical notes stated that her impairments in 2010 appeared to be substantially the same as they were in 2003, when Donofrio was still working. *Id.* Finally, the ALJ noted that "objective medical evidence" supported her finding," including the fact that the "[t]he record contains periodic complaints of pain with periodic prescriptions for pain medication, and sporadic physical therapy and injections primarily after the date last insured," and that Donofrio had only received wrist braces for her carpal tunnel. *Id.*

As an initial matter, it cannot be that Donofrio's testimony was both consistent with the medical evidence yet inconsistent with a claim that she was disabled. Donofrio testified that she could stand or sit for no longer than twenty minutes at a time; could not lift more than five pounds; and had problems concentrating due to pain. Doc. 8 at 722–24. Di Stefano, the vocational expert, found that an individual with these limitations

11

could not perform past work. *Id.* at 735–37. Donofrio's testimony, then, was consistent with her claimed disability. [1]

However, the ALJ appeared to discredit Donofrio's testimony because it was inconsistent with medical and other evidence in the record. The Commissioner must consider "subjective evidence of pain and disability testified to by the claimant." *Brown*, 174 F.3d at 62. To evaluate testimony regarding symptoms, such as pain, the ALJ considers the following factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any measures taken to relieve the pain or other symptoms; and (7) other factors concerning functional limitations and restrictions, as relevant. 20 C.F.R. § 404.1529(c)(3). "However, the Commissioner is entitled to evaluate the credibility of a claimant in light of medical findings and other evidence and come to an independent judgment regarding the true extent of the pain alleged by the claimant." *Howe-Andrew v. Astrue*, No. 05 Civ. 4539 (NG), 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1552–53 (2d Cir. 1983)). "If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

---

[1] As to the Commissioner's arguments that Donofrio's testimony was inconsistent with testimony at her prior administrative hearing or did not refer to the appropriate time period, these are post-hoc arguments not made by the ALJ and therefore inappropriate on review. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (finding that the court may not "affirm an administrative action on grounds different from those considered by the agency" (internal quotation marks and citation omitted)). This is also true of the Commissioner's argument that Donofrio's trip to Puerto Rico, as well as her activities and hobbies, are at odds with a finding of disability.

Although Donofrio maintains that the ALJ relied on conclusory "objective medical evidence," in reaching her conclusion, this is not the case. In reading the ALJ's opinion, it is evident that by "objective medical evidence," the ALJ was referring to Donofrio's treatment record, including "period complaints of pain with periodic prescriptions for pain medication, and sporadic physical therapy and injections primarily after the date last insured," as well as the fact that Donofrio was only prescribed wrist braces for her carpal tunnel. Doc. 8 at 701. The ALJ was entitled to consider Donofrio's "conservative treatment regimen" in evaluating her credibility. *See Penfield v. Colvin*, 563 F. App'x 839, 840–41 (2d Cir. 2014) (internal quotation marks omitted). It was also proper for the ALJ to consider Donofrio's work history. Despite Donofrio's qualifying statement that she would have stopped working the following month because of her disability, the ALJ was entitled to consider "the fact that plaintiff was laid off for reasons other than [her] impairment in assessing [her] credibility." *Balles v. Astrue*, No. 11 Civ. 1386 (MAD), 2013 WL 252970, at *7 (N.D.N.Y. Jan. 23, 2013). As for Dr. Kaplan's statement that Donofrio's symptoms in 2010 were largely the same as they were in 2003, though this is not necessarily inconsistent with a disabling degenerative condition—like the one Donofrio alleges—it may also be read to support the ALJ's position. The ALJ's decision to discredit Donofrio's testimony was therefore supported by substantial evidence.

### B. Dr. Shein's Medical Opinion Evidence

The ALJ assigned no weight to Dr. Shein's medical opinion because he did not explain how the symptoms related back to 2006, when he did not begin treating Donofrio until 2013 and when Donofrio had been involved in a car accident in 2013. The ALJ also found that Dr. Shein's opinion was inconsistent with examination findings from the relevant period and that there was "little evidence to support the extreme limitations prior to the date last insured." Doc. 8 at 700. Donofrio argues that the ALJ was wrong to assign no weight to Dr. Shein's opinion because, as that of her treating physician, it was

entitled to controlling weight. Moreover, she argues, there was nothing *per se* inappropriate about Dr. Shein providing a retrospective opinion, and his opinion was corroborated by clinical and objective medical evidence that pre-dated her date last insured. In the alternative, even if Dr. Shein's opinion was not entitled to controlling weight, Donofrio argues that the ALJ erred by failing to assign any weight to it at all without considering the factors provided in 20 C.F.R. § 1527 and 20 C.F.R. § 416.927.

The Court first considers whether Dr. Shein's opinion was entitled to controlling weight under the so-called "treating physician" rule. Per this rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating source" when determining if the claimant is disabled. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "[A]n ALJ must follow a two-step procedure to determine the appropriate weight to assign to the opinion of a treating physician." *Ferraro v. Saul*, No. 18 Civ. 3684, 2020 WL 1189399, at *1 (Mar. 12, 2020) (summary order) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). The first step is to decide whether the opinion is "well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the case record." *Estrella*, 925 F.3d at 95 (internal quotation marks and citation omitted). If these criteria are met, the opinion "is entitled to controlling weight." *Id.* "Otherwise, the ALJ must proceed to step two and determine how much weight, if any, to give the opinion." *Ferraro*, 2020 WL 1189399, at *1 (internal quotation marks and citation omitted)). When controlling weight is not given to a treating physician's assessment, the ALJ considers the following factors to determine the weight to give the opinion:

> (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors." 20 C.F.R. § 404.1527(c).

14

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (summary order) (citing 20 C.F.R. § 404.1527(c). The ALJ then "comprehensively set[s] forth [her] reasons for the weight assigned to a treating physician's opinion." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).

The Commissioner argues that because Dr. Shein did not treat Donofrio during the relevant period, "he was not a treating source and, therefore, his opinion rendered almost one year after the relevant period in this case could not be probative." Doc. 12 at 18. The Commissioner is correct that Dr. Shein's opinion regarding the relevant period is not entitled to controlling weight. *See Monette v. Astrue*, 269 F. App'x 109, 112–13 (2d Cir. 2008) (summary order); *Arnone v. Bowen*, 882 F.2d 34, 40–41 (2d Cir. 1989). "However, the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight." *Monette*, 269 F. App'x at 113. This is partially because "[a] diagnosis of a claimant's condition may be properly made even several years after the actual onset of the impairment." *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (internal quotation marks and citation omitted). "Such a diagnosis must be evaluated in terms of whether it is predicated upon a medically accepted clinical diagnostic technique and whether considered in light of the entire record, it establishes the existence of a physical impairment prior to [the relevant date]." *Id.* (internal quotation marks and citation omitted).

Yet, an ALJ need not afford these opinions significant weight where "there is substantial evidence that the opinion is contradicted by other evidence." *Monette*, 269 F. App'x at 113. Here, the ALJ concluded that "Dr. Shein's opinion [was] inconsistent with examination findings in the relevant period." Doc. 8 at 700. For example, the ALJ noted that examination findings by Dr. Kaplan "found [Donofrio] to have a normal gait, no difficulty with heel, toe, or tandem walking, and she supported her weight on either foot."

15

*Id.* Likewise, examination findings by Dr. Olsewski "were normal except for range of motion of the cervical spine." *Id.* Furthermore, the ALJ found that Dr. Shein failed to explain how his findings related back to the relevant period. *Id.* Moreover, she found that Dr. Shein's medical opinion was internally inconsistent with his own, contemporaneous examination findings. *Id.* The ALJ's decision, then, was supported by substantial evidence. *See, e.g.*, *Flanigan v. Colvin*, 21 F. Supp. 3d 285, 305–306 (S.D.N.Y. 2014) (finding that ALJ did not commit legal error in affording treating physician's retrospective opinion no weight where physician gave no basis for his conclusion, which was contradicted by medical evidence in the record, including physician's own contemporaneous treatment records).

### C. RFC Determination

Donofrio next argues that the ALJ committed legal error when she determined the RFC without citing to any specific medical evidence, or even to any persuasive non-medical evidence. "It is the rule in [the Second] [C]ircuit that the ALJ, unlike a judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks and citation omitted). In particular, the ALJ must "affirmatively seek out additional evidence," but "only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order) (citation omitted). The rule remains that "if a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician." *Calzada v. Asture*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 201). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Commissioner of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). "[I]t is

well-settled that the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks and citation omitted).

In the absence of clarification from Dr. Shein regarding his medical opinion, the ALJ failed to support her RFC assessment with proper expert medical evidence. Here, the ALJ stated that her RFC assessment was supported by "evidence of record, including the objective findings from the MRIs and EMGs; examinations that showed positive Spurling's maneuver[2] and Hoffman sign,[3] limited range of motion of her cervical spine, tenderness to palpation, and crepitus, but also normal gait, motor strength, sensation; and the claimant's statements regarding her symptoms." Doc. 8 at 701. As to the MRIs and EMGs, "the ALJ is not a medical professional who can interpret the MRIs [and EMGs] to assess Plaintiff[']s RFC." *Alessi v. Colvin*, No. 14 Civ. 7220 (WFK), 2015 WL 8481883, at *6 (E.D.N.Y. Dec. 9, 2015); *see also Hernandez v. Comm'r of Soc. Sec.*, 13 Civ. 959 (GLS) (ESH), No. 13 Civ. 959 (GLS) (ESH), 2015 WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015) ("Without the advice of . . . a medical source, the ALJ, as a lay person, cannot bridge the gap between [Plaintiff's] impairments and the functional limitations that flow from those impairments."). The ALJ's reliance on examination findings was also improper. "Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities . . . the Commissioner may not make the connection [her]self." *Staggers v. Colvin*, No. 14 Civ. 717 (SALM), 2015 WL 4751108, at *3 (D. Conn. June 17, 2015) (internal quotation marks and citation omitted). Finally, Donofrio's

---

[2] Spurling's maneuver is a diagnostic test used to assess cervical nerve root compression. *See* Doc. 10 at 2 n.5 (citing (http://www.physio-pedia.com/Spurling%27s_Test).

[3] "A positive Hoffman's sign may indicate a neurological or nervous system condition that affects the cervical spine nerves or brain." Doc. 10 at 6 n.17 (citing (https://www.healthline.com/health/hoffman-sign#positive-result).

17

own statements—on which the ALJ purported to rely—flatly contradict the RFC assessment, as discussed above.

The Commissioner argues that "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Santillo v. Colvin*, No. 13 Civ. 8874 (GHW), 2015 WL 1809101, at *10 (S.D.N.Y. Apr. 20, 2015). However, this is only the case "when the record is clear and contains *some* useful assessment of the claimant's limitations from a medical source." *Morales v. Colvin*, No. 16 Civ. 0003 (WIG), 2017 WL 462626, at *3 (D. Conn. Feb. 3, 2017) (internal quotation marks and citation omitted). That is not the case here, where the ALJ herself acknowledged inconsistencies in the record, which show both "positive Suprling's maneuver and Hoffman sign, limited range of motion of her cervical spine, tenderness to palpation, and crepitus, *but also* normal gait, motor strength and sensation," Doc. 8 at 701 (emphasis added), and where she failed to specify any appropriate record evidence relevant to Donofrio's RFC.[4]

"Under such circumstances, and in the absence of other medical evidence in the record regarding plaintiff's functional limitations, the ALJ was under a duty to develop the record and obtain medical evidence before making h[er] RFC determination." *Rivera v. Comm'r of Soc. Sec.*, No. 15 Civ. 8439 (GBD) (HBP), 2017 WL 120974, at *13 (S.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, No. 15 Civ. 8439 (GBD) (HBP), 2017 WL 946296 (S.D.N.Y. Mar. 9, 2017). As such, remand is warranted.

---

[4] The Court also notes that the ALJ did not perform a function-by-function assessment of Donofrio's RFC. *See Hilsdorf*, 724 F. Supp. 2d at 348–49. Although this alone would not require remand, *Johnson v. Comm'r of Soc. Sec.*, No. 14 Civ. 2086 (FM), 2015 WL 5854044, at *6 (S.D.N.Y. Oct. 6, 2015), on remand, the ALJ should consider whether such an assessment is appropriate, *see Rivera*, 2017 WL 120974, at *13–14.

**IV. CONCLUSION**

For the foregoing reasons, Donofrio's motion for judgment on the pleadings is GRANTED and the Commissioner's cross-motion for judgment on the pleadings is DENIED. The case is remanded for future proceedings consisting with this Opinion. The Clerk of Court is respectfully directed to terminate the motions, Docs. 9, 11.

SO ORDERED.

Dated: March 27, 2020
       New York, New York

EDGARDO RAMOS, U.S.D.J.